Filed 9/30/15  In re H.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re H.S., a Person Coming Under the Juvenile Court Law. | C078319 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.S.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD235112) |

R.S., father of the minor, appeals from the judgment of disposition.  (Welf. & Inst. Code, § 395.)[1]  He contends there was insufficient evidence to support a finding that H.S. was at risk of sexual abuse and there was insufficient evidence to support continued removal from his custody.  We affirm.

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

1

The Sacramento County Department of Health and Human Services (Department) received a report of possible sexual abuse of nine-year-old B.B., the male half sibling of the three-year-old female minor, H.S., who is autistic and nonverbal.[2] B.B. was overheard telling another child at school that R.S. had been sexually abusing him. B.B. described acts of oral and anal sex and licking or sucking nipples that R.S. perpetrated on him and that he was required to perform on R.S. B.B.'s subsequent statements to school officials and separately to investigating officers and social workers were consistent with the initial statement. When interviewed, the mother denied any abuse had occurred, stated the minor was lying, and blamed the school for telling the minor "things."

The Department filed a petition in August 2014 alleging that H.S. was at risk of sexual abuse by R.S. because B.B. was sexually abused by R.S. on multiple occasions and mother knew or should have known of the abuse but failed to protect him. The detention report stated the mother continued to deny any sexual abuse occurred stating, " 'there is no proof, just because my son said it does not mean it happened.' " The maternal grandmother told the social worker that, over time, B.B.'s sexualized behavior and statements about making R.S. "feel good" made her suspect he was being sexually abused. The court ordered B.B. and H.S detained.

The jurisdiction/disposition report filed in November 2014 said that the mother continued to insist there was no proof B.B. was abused and that he was making up the allegations. The mother reported that B.B. had Attention Deficit Hyperactivity Disorder (ADHD) and that B.B.'s medication increased his attention-seeking behaviors and caused him to have erections lasting more than four hours which explained his sexual behaviors. Mother never reported this or other side effects of the medications to B.B.'s doctor until

---

[2]   B.B. has a different father and no issues relating to him are raised in this appeal.

after the minor's disclosure of sexual abuse. Mother also had several lengthy explanations of why B.B. would make statements indicating he had been sexually abused. R.S. denied he had ever sexually abused B.B. and speculated the child made up the accusations in response to being disciplined. When interviewed in September 2014 B.B. again described the sexual abuse to the social worker and said he had no choice, " 'he keeps doing it, and that's why I keep doing it' " until R.S. " 'tells [him] to stop.' " He did not tell his mother because he was told not to tell her and that he would get in trouble if he did. Although unable to give a precise time frame, B.B. said it happened " 'over and over' " when the mother was asleep or went out. There were no physical findings of sexual abuse of either child. B.B. participated in a Sexual Assault Forensic Evaluation (SAFE) interview in October 2014 but was inattentive and did not respond to the interview. The report stated that the mother gave R.S. permission to educate B.B. on sexual matters and did not question what was happening when the minor had sustained erections and was exposing himself at school. The mother did not ensure that R.S. was providing age-appropriate information to the minor and her daily use of marijuana impaired her ability to ensure the minor's safety. The mother was unwilling to separate from R.S. so that the children could be returned to her care. Mother visited B.B. and visits were generally good, although there was at least one incident where she blamed him for being removed from the home.

At the contested jurisdiction hearing in January 2015 the parties argued the issues but presented no evidence and submitted on the report. Counsel for R.S. argued the court could not sustain the petition as to H.S. solely on B.B.'s disclosure. Counsel noted that B.B. had made no statements since September and neither the physical examination nor the SAFE interview provided any evidence B.B. was sexually abused. Further, B.B. had serious and long-standing behavioral issues. Counsel reasoned that, even assuming B.B. had been sexually abused, there was nothing to indicate that H.S. was at risk of abuse.

3

The court found the petition was true by a preponderance of the evidence stating that, while mother did not know of the abuse prior to B.B.'s disclosure, she failed to protect him thereafter. The court found clear and convincing evidence supported the removal of H.S. from parental custody and adopted a reunification case plan for the mother and father.

## DISCUSSION

### I

Father argues there is insufficient evidence to support a finding that H.S. comes within the provisions of section 300, subdivision (d) because the record does not suggest that she is at risk of sexual abuse. Father contends that the circumstances of B.B.'s sexual abuse, standing alone, are not enough to support section 300, subdivision (d) jurisdiction over a minor of the opposite gender living in the same home. We disagree.

The Supreme Court in *In re I.J.* (2013) 56 Cal.4th 766 (*I.J.*), addressed the question of when sexual abuse of a child of one gender can support a finding that a child of the opposite gender is also at risk of sexual abuse where there is no evidence of sexual abuse of the second child and the second child may not even be aware of the sexual abuse of the first child. (*Id.* at p. 770.) *I.J.* dealt with whether sexual abuse of a daughter could support a determination that her male siblings were also at risk of sexual abuse within the provisions of section 300, subdivision (j).[3] (*I.J.,* at pp. 770, 772.) The court observed that the statutory dependency scheme is designed to provide for the safety and protection of children who are at risk of abuse, thus, the juvenile court is not required to wait until actual harm occurs before exercising jurisdiction. (*Id.* at p. 773.) The Supreme Court

---

[3]  Section 300, subdivision (j) states: "The child's sibling has been abused or neglected, as defined in subdivision . . . (d) . . . and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." The subdivision directs the court to consider the circumstances surrounding the abuse and provides a short list of nonexclusive factors to be considered. (§ 300, subd. (j).)

concluded that, where the facts show serious and prolonged sexual abuse of one child in the home, thereby fundamentally betraying the appropriate generational relationship and contravening the parental role, such sexual abuse supports a finding that there is a substantial risk of sexual abuse of all of the children in the home regardless of gender. (*Id.* at p. 778.)

In this case, the juvenile court found R.S. had repeatedly engaged in anal and oral sex with B.B. as well as licking or sucking B.B.'s nipples and required B.B. to perform similar acts on him. The conduct was both serious and prolonged and accompanied by threats that B.B. "would get in trouble" if he told mother. Both children were preadolescent and susceptible to the adult control and manipulation exercised by R.S. in his abuse of B.B. The kind of sexual abuse and control exercised by R.S. over B.B. placed H.S. at particular risk due to her diagnosis of autism and her inability to communicate verbally, making it difficult, if not impossible, for her to report any abuse. Substantial evidence supports the juvenile court's finding that there is a substantial risk that H.S. would be sexually abused by R.S. within the meaning of section 300, subdivision (d). (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.)

II

Father argues there is insufficient evidence to support the juvenile court's order removing H.S. from parental custody because there is no evidence of a substantial danger to her if she were returned.

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence--that is, evidence which is reasonable, credible and of solid value--to support the conclusion of the trier of fact. (*In re Angelia P.*, *supra*, 28 Cal.3d at p. 924; *In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214.) In making this determination we recognize that all conflicts are to be

5

resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact.  (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.)  The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

To support an order removing a child from parental custody, the court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (§ 361, subd. (c)(1).)

H.S. is a special-needs child whose half sibling B.B. has been sexually abused by H.S.'s father, placing H.S. at similar risk of harm.  R.S. denies the abuse occurred and has not participated in services to address the reasons for removal.  There would be substantial danger to H.S.'s physical and emotional well-being if returned to his care.

H.S.'s mother did not act to protect B.B. by separating from father and blamed B.B. for his own detention.  Mother has various explanations for why B.B. would say that R.S. sexually abused him but does not accept that the abuse occurred.  The maternal grandmother had less contact with B.B. than did the mother but her limited observations of his behavior and statements led her to suspect he was being sexually abused.  Mother minimized, excused, and ignored the same or similar circumstances.

If returned to parental custody, H.S. would be at risk of sexual abuse and unable to tell anyone if it occurred.  It is unlikely the mother would act to protect H.S. since she has already failed to protect B.B.  Ample evidence supports the juvenile court's finding that there would be a substantial danger to H.S.'s physical health and safety if returned to parental custody.

## DISPOSITION

The judgment is affirmed.

/s/
Blease, Acting P. J.

We concur:

/s/
Mauro, J.

/s/
Duarte, J.

7